# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT J. COOK, | Case No.: CV 09-137-S-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of the United States Social Security Administration,, | |
| Respondent. | |

Now pending before the Court is Robert J. Cook's Petition for Review (Docket No. 1),

seeking review of the Social Security Administration's final decision to deny his claim for

disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully

reviewed the record and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On May 7, 2004, Robert J. Cook ("Petitioner") applied for disability insurance benefits

and supplemental security income payments, alleging disability beginning January 1, 2004. (AR

77-79). Petitioner's applications were denied initially on October 12, 2004 (AR 71) and, again,

upon reconsideration on February 17, 2005 (AR 64). Petitioner filed a timely request for a

hearing before an Administrative Law Judge ("ALJ"). (AR 63). On September 19, 2006, ALJ

**MEMORANDUM DECISION AND ORDER - 1**

Hayward Reed held a hearing in Boise, Idaho, at which time, Petitioner, represented by attorney Andrea Cardon, appeared and testified. (AR 343). A vocational expert, Anne F. Aastum, and Petitioner's ex-wife, Rebecca Cook, also appeared and testified during the same September 19, 2006 hearing. (AR 343).

On June 6, 2007, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 21-40). Petitioner timely requested review from the Appeals Council on August 3, 2007. (AR 20). On January 30, 2009, the Appeals Council denied Petitioner's request for review (AR 7), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that "Defendant and ALJ Reed's decision that Mr. Cook is not disabled is not supported by substantial evidence, contains errors of law, and constitutes an abuse of discretion." *See* Brief in Supp. of Pet. for Review, p. 2 (Docket No. 13). Specifically, Petitioner asserts that the ALJ: (1) failed to properly evaluate the opinions of Petitioner's treating physicians (*see id*. at pp. 4-6); (2) failed to properly evaluate Petitioner's credibility (*see id*. at pp. 6-8); (3) improperly rejected the testimony of lay witness testimony during the administrative hearing on September 19, 2003 (*see id*. at pp. 7-8); (4) failed to properly discuss the non-examining consultants' opinions (*see id*. at p. 9); (5) inappropriately relied on the vocational expert's testimony in response to hypothetical questions (*see id*. at pp. 9-10); and (6) incorrectly placed Petitioner within a "light work" category instead of a more-appropriate "sedentary work" category (*see id*. at pp. 11-12). Petitioner therefore requests that the ALJ's decision be reversed and/or remanded to allow the ALJ an opportunity to further reevaluate the evidence.

**MEMORANDUM DECISION AND ORDER - 2**

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.     Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process when determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and

**MEMORANDUM DECISION AND ORDER - 4**

regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date."  (AR 26).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe combination of impairments: (1) a history of L5-S1 herniated nucleus pulposus, status post discectomy in October 1986; (2) a right subtalar joint arthritis, status post history of bilateral calcaneal fractures to the heels in August 1998 with closed treatment fixation; (3) peripheral vertigo; (4) unspecified, mild sensorineural hearing loss; and (5) degenerative disc and facet disease of the cervical spine.  (AR 26-27).  The ALJ went on to state that "these impairments cause more than a slight abnormality or a combination of slight abnormalities on the claimant's ability to work, therefore, they are severe."  (AR 27).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 27-32).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner could perform a range of work with the following limitations: (2) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk at least 2 hours of an 8-hour workday; (3) sit throughout an 8-hour workday with the ability to alternate positions as needed to relieve pain and discomfort; (4) push and pull within the weight limitations; (5) frequently kneel or crawl; (6)

occasionally climb stairs or ramps, balance, stoop, or crouch; (7) never climb ladders, ropes, or scaffold; and (8) avoid concentrated exposure to temperature extremes, hazards, or vibration. (AR 32-38). In doing so, however, the ALJ further found that Petitioner is unable to perform any past relevant work. (AR 38).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner was not able to perform past relevant work; however, the ALJ also found that Petitioner maintained the ability to perform a number of unskilled, light occupations in the national economy, including survey worker, cashier II, and an office helper. (AR 39-40).

**B.    Analysis**

   1.    Petitioner's Medical Providers' Opinions

The ALJ rejected the medical opinions that suggested Petitioner maintained a covered disability, even though those opinions originated from Petitioner's treating physicians. The ALJ relied instead on the objective medical evidence of record, including evidence from Petitioner's other medical providers.

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The

treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id.* Where the treating physician's opinions are not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record for doing so. *Id.* Regardless, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Therefore, merely concluding that a particular physician is a treating physician does not mandate the adoption of that physician's opinions. In addition to the standard outlined above, treating physician's opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and rationale to support treating physician's opinion is sufficient reason for rejecting that opinion).

a.  *Dr. Maughan*

On January 29, 2007, Dr. Maughan completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (the "Medical Source Statement"). (AR 279-282).

There, Dr. Maughan recommended, among other things, that Petitioner "never" perform climbing or balancing activities. (AR 280). Although giving "significant weight" to the majority of Dr. Maughan's overall findings, the ALJ disagreed with Dr. Maughan as to Petitioner's climbing/balancing limitations, stating:

> The evidence does not support the claimant cannot perform any climbing or balancing, as he is able to move around, walk out and get the paper, which he testified was about a two block distance, and he lived in a three-story apartment at the time of his alleged onset. He does not require the use of any assistive device.

(AR 38). Petitioner disputes the ALJ's conclusion in this respect, arguing that the ALJ "distort[ed] Dr. Maughan's opinion and the medical record" and that Petitioner's medical records support Dr. Maughan's findings. *See* Brief in Supp. of Pet. for Review, p. 5 (Docket No. 13). The Court cannot agree.

First, the record reveals that the ALJ did not distort Dr. Maughan's opinion. The Medical Source Statement outlines in no uncertain terms that Petitioner can/should never perform climbing and balancing activities. (AR 280). The ALJ's paraphrasing of this opinion within his decision (*see supra* at p. 9) does not amount to a distortion of the record; indeed, it is altogether consistent with the record. Moreover, Petitioner's own briefing acknowledges that the Medical Source Statement reflects Dr. Maughan's opinion in this respect. *See* Brief in Supp. of Pet. for Review, p. 5 (Docket No. 13) ("On the Medical Source Statement [ ], Dr. Maughan indicates Plaintiff has postural limitations in climbing and balance. Out of three choices, Dr. Maughan marked "Never" since it best describes Plaintiff's limitations and is entirely consistent with Dr. Maughan's medical opinion and records.").[1]

_____

[1] Moreover, it should be pointed out that, in the Medical Source Statement, Dr. Maughan stated that Petitioner could "frequently" perform kneeling, crouching, crawling, and stooping activities (AR 280), arguably contradicting his earlier, November 9, 2006 letter to Petitioner's then-attorney (which Petitioner favorably cites), where he stated that "[b]ending, stooping, kneeling might worsen symptoms" (AR 323).

**MEMORANDUM DECISION AND ORDER - 9**

Second, even when assuming that the ALJ's reliance on Petitioner's limited ability to "move around, walk out and get the paper" (*see supra* at p. 9) is insufficient to question Dr. Maughan's take on Petitioner's postural limitations, Petitioner ignores the fact that, even when considering Dr. Maughan's climbing and balancing restrictions, Ms. Aastum, the vocational expert, cited the same three occupations as available to Petitioner. (AR 142-143) (responding to vocational interrogatories, and "assum[ing] the claimant has the residual functional capacity set out in the medical source statement from Dr. Maughan . . . ."). Stated another way, it would seem that none of the occupations identified as available by the ALJ at step five of the sequential analysis (*see supra* at p. 7) is necessarily dependent on Petitioner's allegedly limited climbing and balancing skills.[2] Thus, the ALJ's disregard of Dr. Maughan's opinion as to Petitioner's limitations in these respects does not automatically morph his decision into one that lacks clear and convincing reasons for rejecting Dr. Maughan's opinions.

   *b. Dr. Kristensen*

In a December 26, 2000 letter to Petitioner's then-worker's compensation counsel, Dr. Kristensen stated that Petitioner:

> should avoid climbing and heights, as he does have limited subtalar motion. In addition, he needs to minimize time on uneven ground and should not do combined walking or standing for more than twenty minutes per hour. Certainly running and jumping activities would not be tolerated.

(AR 147). Petitioner contends that the ALJ improperly ignored these recommendations. *See* Brief in Supp. of Pet. for Review, p. 6 (Docket No. 13). The Court, again, disagrees.

---

[2] Respondent raises a similar argument. *See* Resp't Brief, p. 7 (Docket No. 17) ("[n]one of the occupations identified by the ALJ at step five require[s] any climbing or balancing. Thus, even if the ALJ should have fully adopted Dr. Maughan's opinions regarding Petitioner's abilities to climb and balance, any such error was harmless."). Petitioner does not offer a focused response to this argument, beyond commenting on the differences between "sedentary" and "light" work. *See* Pet.'s Reply, p. 3 (Docket No. 18); *see also infra* at pp. 21-22.

**MEMORANDUM DECISION AND ORDER - 10**

Contrary to Petitioner's claims, the ALJ did, in fact, address Dr. Kristensen's findings

within his decision. (AR 28 & 36). Additionally, the ALJ appropriately noted that, despite

Petitioner's injury,[3] "he was able to return to his construction work, which was medium in

exertional demands, and continued doing that type of work until December 2003." (AR 36).

This was confirmed with both Petitioner and the vocational expert, Ms. Aastum, during the

September 19, 2006 hearing:

> ALJ: Well, you were laid off, and it's not related to your medical
> condition, and apparently you weren't getting accommodations
> related to your medical condition when you were employed up until
> you were laid off. Is that correct? In other words, you had the same
> duties as other people?
>
> PET: Yes.
>
> ...
>
> ALJ: Based on all the evidence, the vocational information you were
> provided, was there any indication of accommodations or subsidy
> related to the Claimant's employment up to his alleged onset date
> which is January 1, 2004?
>
> VOC: There was not.

(AR 359 & 380). Because Petitioner was capable of continuing objectively more demanding

employment without accommodation following his August 17, 1998 injury, the relevance of Dr.

Kristensen's opinions during that time (more than three years *before* Petitioner's alleged onset

date) is questionable when tasked with determining Petitioner's current disability status. *See*

*Gunderson v. Astrue*, 2010 WL 1041443, *2 (9th Cir. 2010) ("Because '[m]edical opinions that

predate the alleged onset of disability are of limited relevance,' the ALJ did not err in according

---

[3] Petitioner visited Dr. Kristensen as a result of an August 17, 1998 industrial injury to
his heels (bilateral calcaneus fractures). (AR 146-148).

less weight to the opinions of [the petitioner's treating physician]." (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008))); *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n. 1 (9th Cir. 1988) (concluding that ALJ correctly rejected medical evidence because it predated the relevant time period). Therefore the ALJ did not err when considering the opinions of Dr. Kristensen.

Simply put, there is no question that Petitioner suffers from several severe impairments (acknowledged by the ALJ (*see supra* at p. 5)) that no doubt impact his ability to work; however, it cannot be said, as Petitioner's counsel infers, that the ALJ failed to provide specific legitimate reasons for rejecting Dr. Maughan's and Dr. Kristensen's opinions. While these physicians' assessments may not have been given the weight Petitioner would have preferred, they were not given independent of the surrounding record. At this stage of the proceedings, it is not this Court's duty to resolve the conflicting opinions in the record and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court's responsibility is to consider whether the ALJ's decision in determining that Petitioner is not disabled as of January 1, 2004 is supported by the record. With this in mind, given the conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Drs. Maughan's and Kristensen's medical opinions. Because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

  2.    Petitioner's Credibility

Petitioner also takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible. *See*

Brief in Supp. of Pet. for Review, pp. 6-8 (Docket No. 13). As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.[4]

First, notwithstanding Petitioner's testimony, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged inability to work. (AR 33-36). For example, despite Petitioner testifying that he was "too sick to even

---

[4] Although there is no indication that the ALJ considers Petitioner to be a malingerer, the record potentially provides some evidence to the contrary. (AR 301-302) ("Although there was evidence of actual physical issues, he seemed prone towards hypersensitivity to discomfort, potentially exasperating pain and limiting functioning. . . . . When combined with potential perceptions that he exaggerates issues . . . . Since he may be demanding of attention . . . ."). If so, the ALJ did not even need "clear and convincing" reasons to reject Petitioner's testimony about his physical condition. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ could . . . reject [claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" (internal citations omitted)).

**MEMORANDUM DECISION AND ORDER - 13**

consider [looking for work after his injury]" (AR 355), he is capable of performing general household chores when describing a typical day of his:

> ALJ: Okay, take me through a typical day for you from the time you get up until the time you go to bed. What does your day look like?
>
> PET: Well, I get up about between 6:30 and 7:00. I'll go let the dogs out, maybe start some coffee. I walk out and get the paper. Then I come back in and sit down. I'll generally sit for about an hour or sometimes a little bit more. That point, I may do the dishes. I generally don't do them at night. I'll do the dishes the next – in the mornings. I'll do the dishes, and then I'll sit down. I'll probably sit down for maybe 15 or 20 minutes. Then I'll go dry the dishes and put them away. Then I'll sit down. By then I'll probably vacuum at that point of the day. By then, time to take a shower. At maybe 10:00 or 11:00, I'll take a shower. By then, it's time for lunch, and that's pretty much – for the most part, that's your day.
>
> ALJ: So what do you do in the afternoon?
>
> PET: The afternoon I'll usually, you know, may lay on the couch. Generally might watch TV, might just lay there. It's –
>
> ALJ: Okay.
>
> PET: May just do nothing.

(AR 369). Moreover, despite an apparent stint with Schmidt Construction Company during the first quarter of 2004, the ALJ further pointed out that Petitioner drew $4,160.00 in unemployment benefits in 2006. (AR 35 (citing (AR 86))). It was entirely proper for the ALJ to consider that Petitioner's receipt of unemployment benefits was inconsistent with a claim of complete disability. *See, e.g.*, *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (application for unemployment compensation benefits can adversely affect claimant's credibility because of admission of ability to work required for unemployment benefits).

**MEMORANDUM DECISION AND ORDER - 14**

Second, the paucity of treatment notes confirming Petitioner's alleged disability and corresponding limitations further challenges Petitioner's credibility. For instance, in June 2004, Dr. Roos commented that there was "[n]ot much in the way of objective findings" and that "[s]ymptoms may well be due to chronic alcoholism." (AR 228).[5] Two months later, Petitioner's Physical Residual Functional Capacity Assessment confirmed as much. (AR 254) ("Claimant is not very credible. He is alleging being in a bed for 4 ½ months and wearing eye patch for months. There is no medical evidence to support this. His dizziness is mild and might be related to his alcohol intake. MRI of the brain negative, neurological exam negative.").[6] Lastly, there is no prescribed medication that Petitioner consistently uses to treat his alleged condition. (AR 34). While Petitioner claims he does not have the means to finance any medication, he is able to support a two-packs of cigarettes/day and six-pack of beer/day habit for 30 years. (AR 231).[7] In short, Petitioner's historical failure to seek treatment for his alleged condition compromises his very claim of disability. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("That [the claimant's] pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain." (internal citation omitted)).

---

[5] Dr. DeFrang similarly believed that Petitioner's symptoms "could very well represent results of chronic alcohol use." (AR 227).

[6] In a February 14, 2005 reconsideration review, the non-examining state agency consultants noted: "In report of contact w/clmt, he noted allegations in reconsideration of 'falls' to be such of 'no injuries', occurrences of 'couple of times' but w/no reports to MD or injuries to such that he has suffered loss of consciousness or need for medical treatment." (AR 258).

[7] "Where a claimant provides evidence of a good reason for not taking medication for [his] symptoms, [his] symptom testimony cannot be rejected for not doing so." *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, however, the requisite "good reason" does not exist when considering Petitioner's budget for non-medical, leisure pursuits.

Third, Petitioner's testimony during the September 19, 2006 hearing is at odds with his earlier comments to various medical providers. That is, during the hearing, Petitioner stated that he was not drunk at the time of the December 2003 accident that gave rise to the alleged January 1, 2004 onset date. (AR 358). However, not long after his accident, Dr. DeFrang reported:

> Approximately 10 days ago on Friday 12/26/03, he says he has "too much holiday spirit" and spent most of the day drinking heavily. He didn't eat any food and then in the evening he blacked out. He fell backwards and hit his head on the back of an oak table and lost consciousness.

(AR 231); *see also* (AR 250 & 257) ("He fell down on 12/26/03 while significantly intoxicated and hit a table with the back of his head. He was unconscious for 10-15 minutes and when he recovered he did not have any neurological deficits."). These inconsistencies do not function to support Petitioner's credibility.

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. This is not to say, however, that this Court conclusively finds Petitioner not be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of his position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility in denying disability benefits is not without clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed on this particular record. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must

defer to the Commissioner's decision."). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

3.    Lay Witness Testimony

(1) Rebecca Cook, Petitioner's ex-wife, and (2) Sheila Escher, Petitioner's friend, offered testimony concerning Petitioner's alleged condition. (AR 372-378; 139-140). The ALJ, however, did not lend significant weight to either. (AR 36). Specifically, the ALJ contrasted Ms. Cook's testimony with the medical findings in the record, while also challenging Ms. Escher's credibility with respect to her comments on whether Petitioner is disabled within the rubric of the Social Security laws. *See id.* This approach is not inconsistent with *Bayliss v. Barnhart*, where the Ninth Circuit reasoned:

> An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason. The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

*Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, Mses. Cook's and Escher's close relationship with Petitioner and their desire to help him cannot be questioned. However, Ms. Cook's perspective remains inconsistent with evidence in the record. As discussed before, the conflicting medical testimony, Petitioner's daily activities, and the lack of medical treatment for an extensive amount of time provided the ALJ with reasons for doubting Ms. Cook's testimony that are germane to her. (AR 36) ("The claimant did not appear withdrawn, forgetful or depressed at the hearing, and there is no evidence of treatment for depression. There is no evidence to support he had actual visual limitations or required an eye patch, and her testimony regarding his performance of daily

activities is inconsistent with testimony that she works full time and is gone during the day.").[8]

Similarly, Ms. Escher's account of the events surrounding Petitioner's December 2003 accident

is not altogether in line with what appears to have actually happened, particularly with respect to

whether Petitioner had been drinking that evening, how Petitioner fell, and Ms. Escher's failure

to seek medical help despite Petitioner allegedly being unconscious for 15-20 minutes. *See id.*

("Ms. Escher is not qualified to make medical decisions regarding medical care or the status of

his condition."). These reasons for doubting Ms. Escher's testimony are germane to her.

Therefore, there is no basis to claim that the ALJ improperly disregarded either Ms.

Cook's or Ms. Escher's testimony. While ultimately not favorable to Petitioner, the ALJ's

rejection of their testimony was not made independent of the record. Under these circumstances,

because the evidence can reasonably support the ALJ's conclusion, this Court will not interfere

with the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

4.      Non-Examining Consultants' Opinions

Petitioner argues that "ALJ Reed failed to properly evaluate, give weight, and explain

the non-examining consultants' opinions anywhere in his decision." *See* Brief in Supp. of Pet.

for Review, p. 9 (Docket No. 13). Examining the ALJ's decision, however, reveals that

Petitioner's arguments are misplaced.

The ALJ fully discussed the non-examining state agency consultants' opinions, later

addressing the relative weight afforded to the same. (AR 38) (after outlining consultants'

---

[8]  Additionally, while Ms. Cook characterized Petitioner's drinking as "rare" and that he consumes "maybe two bears" over six months (AR 376), Petitioner himself told his medical providers that he drank "about 12 beers per week, which he qualifies as 'not too much'" (AR 227) and, even, a "6-pack per day or more" (AR 231).

**MEMORANDUM DECISION AND ORDER - 18**

findings, stating: "Although these are non-examining physicians, their opinions are entitled to consideration in conjunction with all the other evidence. There is no evidence to contradict their conclusions; therefore, the [ALJ] gives their opinions significant weight in determining the claimant's residual functional capacity."). Therefore, Petitioner mistakenly assigns error to the ALJ when none actually exists - indeed, as Respondent points out, the ALJ actually assessed the same limitations (and sometimes greater limitations) as those offered within the examining consultants' assessment. *See* Resp.'s Brief, p. 15 (Docket No. 17).[9] Without more, the ALJ's analysis of these opinions does not operate to reverse the ALJ's decision.

5. Hypothetical Questions Posed to the Vocational Expert

An ALJ must propound a hypothetical to a vocational expert that is based upon medical assumptions supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *Robbins v. Social Security Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). Petitioner argues that the ALJ posed improper hypothetical questions to the vocational expert because the assumptions were not supported by the record. *See* Brief in Supp. of Pet. for Review, pp. 9-10 (Docket No. 13). Namely, Petitioner argues that the ALJ's assumption concerning Petitioner's alleged climbing/balancing activities (*see supra* at pp. 8-10) was in error. The court again disagrees.

During the hearing and through written interrogatories, the ALJ posed a number of hypothetical questions to Ms. Aastum, the vocational expert. (AR 382-386; 143-144). Among

---

[9] The Court is not convinced that the ALJ incorrectly paraphrased the non-examining physicians' opinion that "claimant is capable of light work" (AR 257) as being "precluded from heavy work" (AR 38). These terms are not inherently inconsistent. Still, even when assuming a significant difference in the terms' meanings, any difference amounts to harmless error. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying harmless error standard).

those hypothetical questions was a recounting of the physical limitations offered by Dr.

Maughan for the purposes of understanding the scope of available employment opportunities in

the national economy. (AR 382-383; 142-143). The ALJ also posed another hypothetical to Ms.

Aastum, with different climbing/balancing activities based upon Petitioner's daily activities.

(AR 143); *see also supra* at pp. 9-10.[10] The ALJ even presented Ms. Aastum with the very

hypothetical that Petitioner presumably suggests is the appropriate query, asking:

> ALJ:      Okay, under a third hypothetical, having heard the Claimant's
> testimony regarding his job performance and regarding his
> limitations, assuming all the limitations as described in his testimony
> are valid, would he be able to perform either his past work or other
> work in the national economy?
>
> PET:      He would not, Your Honor. He states that he feels sick. He has
> fevers. He's off balance much of the time, and he lays on the couch
> for most of the afternoon.

(AR 386). Yet, Petitioner still offers a blanket statement that the assumptions presented to the

ALJ are invalid. *See* Brief in Supp. of Pet. for Review, pp. 9-10 (Docket No. 13).

Based upon the record, then, the ALJ fashioned hypothetical questions for the vocational

expert premised upon Petitioner's age, education, work experience, and residual functional

capacity. In turn, the vocational expert relayed that, while incapable of performing any past

relevant work, he was able to perform a number of jobs existing in significant numbers in the

national economy. This is the very function of both the ALJ and the vocational expert during the

mandated sequential process. Petitioner's arguments in this respect are without merit.

---

[10] As stated elsewhere in this Decision, Ms. Aastum still identified the same light duty
employment opportunities as those identified when taking into consideration Dr. Maughan's
climbing/balancing recommendations. *See supra* at p. 10.

**MEMORANDUM DECISION AND ORDER - 20**

6. "Light" Work vs. "Sedentary" Work

At step five of the sequential analysis, the ALJ found Petitioner to be capable of performing light work. *See supra* at p. 7. According to Petitioner, light work "'requires a good deal of walking or standing' which is 'the primary difference between sedentary and most light jobs.'" *See* Brief in Supp. of Pet. for Review, p. 11 (Docket No. 13) (quoting SSR 83-10). Petitioner goes on to state that "light work requires 'being on one's feet up to two-thirds of a workday (and) the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'" *See id.*

Because the ALJ *also* determined that Petitioner could only (1) stand and/or walk at least 2 hours in an 8-hour workday, and (2) sit through an 8-hour workday with the ability to alternate positions as needed to relieve pain and discomfort (*see supra* at p. 6), Petitioner now argues that the ALJ's finding that Petitioner is capable of performing light work is inherently inconsistent. *See* Brief in Supp. of Pet. for Review, p. 11 (Docket No. 13) ("Since light work requires approximately 6 hours of standing or walking in an 8 hour workday, the ALJ finding of at least 2 hours is much more compatible with sedentary work. However, instead of placing Plaintiff in the correct category of sedentary work, ALJ Reed illogically and without merit places Plaintiff in the incorrect light work category with all sorts of limitations not commonly associated with light work.").

This possible discrepancy did not go unnoticed by the ALJ, relying on the vocational expert's experience when commenting on the requirements of those jobs available to Petitioner. (AR 39). In this respect, Ms. Aastum squarely addressed Petitioner's argument when responding to written interrogatories from the ALJ:

The discrepancies are that jobs at the Light level generally require the ability to stand and walk for 6 hours out of an 8 hour day, however, these jobs provide a sit/stand option or are also performed all sitting. My basis for that is [ ] my 19 years experience as a vocational rehabilitation counselor and contact with employers to determine the physical requirements necessary for work.

(AR 143). In other words, these light duty occupations nonetheless exist to Petitioner, even when considering the sit/stand limitations identified by the ALJ. Characterizing Petitioner as capable of performing such light work, therefore, does not render the ALJ's decision defective.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. However, to simply express disagreement, without more, is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

**MEMORANDUM DECISION AND ORDER - 22**

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 8, 2010**



_____
Honorable Ronald E. Bush
U. S. Magistrate Judge